The next case this morning is Kirk v. Clark Equipment and Mr. Peterson. Mr. Patterson, Your Honor. Robert Patterson for Tyler and Melissa Kirk. May it please the Court. We're here, as the Court knows, on appeal of the District Court's order granting a Daubert motion in favor of the defendant, finding that in the Court's judgment, our expert Dan Pacheco, a mechanical engineer, did not have a reliable methodology to support his opinions. He therefore barred Mr. Pacheco from testifying, and that led to a summary judgment order in favor of the defense. Because we believe that the Court erred very seriously in not considering adequately the Daubert standards for reviewing a question like this. We prosecute this appeal and ask that those two orders be reversed. Mr. Patterson, can I ask a question? Was the loader equipped with a 62-inch bucket? Was it new? No. Was No. The loader itself was originally sold in 2008 by Clark Equipment through a distributor to the owner, Sterling Steele, and it was sent at that time with the 62-inch bucket, the larger bucket. Prior to that, they'd had a loader with a 52-inch bucket, and subsequently after Mr. Kirk's injury, they went back to a smaller loader with a 56-inch bucket for the obvious reason that it would not be as front-heavy because the bucket is 50% smaller. But the new bucket they purchased had a 62-inch bucket. It did, and it was replaced once during the lifetime. In 2013, it was replaced with another 62-inch bucket. Thank you. There essentially are three issues under Daubert that the court well knows. One is, is the expert qualified? There is no issue about that, I don't believe. The counsel for the defense hasn't raised it, and Judge Blakey did not find that Mr. Pacheco was not qualified. He had a very extensive background in industry, including with material handling equipment, front-end loaders, the design of them, buckets, and so forth. So I'll not address qualifications other than to submit to the court that that issue is satisfied in our favor. The second issue always is whether or not the opinion by the expert is reliable, and that focuses primarily on the methodology used by the witness or the expert. And I would like to just real briefly just call to the court's attention some language from Lapsley v. Extec, a case from this court talking about Dr. Hutter. And the court there said, when defining what is adequate scientific method, because that's really what I think Judge Blakey was concerned about, Dr. Hutter's approach, starting from the known facts about the accident and eliminating other possible explanations until he was left with a hypothesis that was physically possible and that fit the evidence is a good example of the scientific method. We believe that's just exactly what Dan Pacheco did in this case. As our briefs and the records show, there was very extensive discovery conducted. All the specifications, the investigation documents, photographs, all were exchanged between the parties, including Sterling Steele. Mr. Pacheco had all of that analyzed it carefully. His testimony shows that he not only did that, but he received industry standards that relate to stability of front-end loaders. In this case, it's called a skid steer. It's a small front-end loader. And he studied all of those, including doing some zone calculations to try to determine, based on the two different size buckets that we're talking about, the 62-inch or the 54-inch, when and where would a load tend to cause the bucket to tip forward. A very important aspect of the engineering has to do with the fact that when the bucket is raised in its full forward position, preliminary to being dumped, which is exactly what Tyler was at the time of this injury, it reaches what's called a max reach position. Max reach position is the most unstable position. And at that point, the rated operating capacity is reduced because if you imagine a teeter-totter, if you put somebody heavy on one end and somebody light on the other end, one side is going to go down. When you move that max reach position forward out, it makes it less stable. Everyone agrees with that, including Sean Warkenthien, the product safety chief for Clark Equipment. And that's the place where Mr. Pacheco did calculations that were not done by anyone else. I had forgotten to mention that I'd like to reserve five minutes of my time for rebuttal if it's not too late to do that. Just take care of your own time, counsel. I will. Thank you. The primary issue, though, is his methodology. Well, he looked at everything that was possibly available to him. And then Judge Blakey criticized him because he didn't examine the machine and he didn't operate the machine, the particular S-130 involved in this case. Well, it would make no sense to do that. Two reasons. One is that Sterling Steel and their engineers and Sean Warkenthien himself from Clark had done extensive examination and found no other impediments, no failures, no mechanical problems with that machine. So for Mr. Pacheco to go out there and examine it again to find the same thing would be pointless. Second, the machine had been altered. It was not the same machine and it would not operate the same way because Sterling Steel, to protect their employees, had put on a 56-inch bucket, the smaller size then available in 2015, so that this kind of a forward tip would not occur again. There's extensive engineering done by Mr. Pacheco having to do with the center of gravity of the machine. It relies in some regard on information from Sterling Steel, sorry, from Clark in that regard. There's extensive information about the load in the bucket, the heap load and the struck load, they call it. All of those things are well set out in the briefs. And those are things that experts from both sides can educate a jury about. My point is, Mr. Pacheco has done everything that an expert could possibly do in order to analyze the case fully and present the evidence to the jury. Do you say that the bucket was replaced the original, which was a, we'll call it a bigger or deeper bucket, and they put a smaller one on and that's when the injury occurred? No, no, just the opposite. The injury occurred with the larger bucket and then after the injury, about two months later, Sterling Steel put on the 56-inch smaller bucket. So it was after the injury then? Yes. It wasn't, they didn't do that beforehand. All right, so it was the bigger bucket that caused the problem or was part of the problem? Indeed, and there are engineering issues about the dynamics of the machine as you move it, speed, things like that. What this boils down to is a dispute between the parties as to whether Tyler Kirk's manner of operating the machine was a cause, not necessarily the sole cause, but even a contributing cause to the tip or whether it's due to the imbalance because of the large bucket. The way to resolve that is for the jury to hear from both sides and to make that decision based on and explain to them why the dynamics are such that a tip can occur even if you're within a rated operating capacity. Certainly, if your load is above the rated operating capacity, then that's even a worse situation. Was Pacheco going to testify that the bucket that they were in the accident or injury happened was too big? Is that going to be his opinion? Indeed, that's right. It's too big for the dense load of steel scale that this bucket was used only for. So in his, but his expert opinion, he wasn't, he didn't get in as an expert, but he would have testified that the bucket that when the injury was caused was too big and that was part of the cause. Indeed, that's right. It's improper for this operation on this size of a machine and it should not have been sold by Clark at the time of the sale of the machine. It came with the machine. It was, it was a part that the customer ordered, but it came with the machine and it should not have been for this kind of a load. And there's one passage in the operating manual that's very important. I think on page, it's our appendix, page 25, and Clark tells the operator, if longer buckets are used, now bear in mind that the machine would ordinarily be sold with a 54 inch bucket. If longer buckets are used, the load center moves forward and reduces the ROC rated operating capacity. If very dense material is loaded, the volume must be reduced to prevent overloading. Clark knows perfectly well when they design this and they sell this bucket with this machine, that it should not be sold for this long buck. It should not be sold if dense material is going to be used. And yet they sold it anyway. It's not a negligence case. It's a strict liability case. And so they're responsible for the unreasonably dangerous condition of the product. But that's the gist of the case. And Mr. Pacheco did go through all of Tyler Clark's behaviors. Mr. Workenthien agrees that Tyler's behaviors, as he testified, were appropriate. Later on, he comes back as an expert and says he may have been speeding, he may have decelerated too fast. All of these things are opinions of the defense expert, a jury can consider them. But there's the evidence with support of finding for the plaintiff that he operated the machine properly, leaving no other alternative but the imbalance of the machine due to that large bucket. I believe my time may be up. I'd like to reserve at least a minute or so for rebuttal. But I obviously would answer any questions as well. Thank you. All right. Thank you, counsel. Mr. Garside. Thank you, Judge. And good morning. May it please the court. My name is John Garside, and I represent Clark Equipment Company, the FLE in this case. They do business as Bobcat Company, which manufactures the very well-known line of Bobcat compact construction equipment. This case is a complex product liability case requiring expert testimony to address the stability of a Bobcat S-130 skid steer loader. Before I get too far into my argument, I do want to address one factual issue to make sure it's clear for the court. The employer of the plaintiff, Tyler Kirk, in this case, purchased the S-130 in 2008. They specified to the dealership, not to Bobcat Company directly, to one of its authorized dealers, that they wanted a 62-inch low-profile bucket on this skid steer loader for use picking up steel scrap. They then used the 62-inch bucket with the S-130 for about five years until 2013, when the bucket apparently wore out, and they replaced it with another 62-inch low-profile bucket, which they kept using until Mr. Kirk had his accident. There were no other similar accidents along the way, which is an important fact that the plaintiff's expert didn't do much to deal with. But unfortunately for the appellants, their hired expert, Dan Pacheco, tried to do the bare minimum in this case, and he identified a purported defect that supposedly only existed with this skid steer loader when it was configured with this particular size of bucket and used for this particular use, picking up dense, heavy steel. It was called steel scale, a byproduct of the steel making process. He claimed the defect was that the 62-inch bucket allowed the operator to pick up too much, more than the rated operating capacity of the loader. For this particular loader, configured the way it was with some additional options, the rated operating capacity was 1420 pounds, and that is half the weight of what we call tipping weight, which is the weight that will cause the loader to simply tip forward if the bucket is raised to the tipping point, which is about chest high. So half that amount is what we call the rated operating capacity, according to industry standards. So the amount is not by the size, the amount is the weight? Correct. Okay, so obviously there's a lot of variation in scrap, I suppose, but in any event, you're saying that the original bucket was used for what, five years, and then they got a new one? Yes, they replaced the original bucket after five years, and then after another two years of use, Mr. Kirk had his accident. So seven total. That was the first accident in seven years, is what you're saying? Correct, that is correct. Mr. Pacheco did no testing of his theories. He did not inspect or operate this accident loader. He never inspected the scene. He never went to Sterling Steel factory. He has never operated a skid-steer loader at full capacity, never used one to pick up and move materials. He did no original research. He used articles from a number of years ago that were provided to him by plaintiff's counsel, and he does not know how fast Mr. Kirk was traveling or how much weight was in the bucket. Now, this last fact is really the salient one for purposes of the motion to exclude that we filed against Mr. Pacheco. His report did not say that he would give the opinion that the weight in the bucket exceeded the rated operating capacity at the time of this accident. So I asked him, and I asked him more than once in his deposition, are you going to say that? And he said, no, because we don't know. And he would try and sort of, he would say, we don't know the exact amount in the bucket. And I would follow up and say, well, you also, you don't know whether it exceeded the rated operating capacity. Well, no, we don't know that either. He said this more than once. Plaintiff's attorney after that led him to testify that it was likely that the amount exceeded the rated operating capacity, but he had already said a couple of times that he didn't know. The court, the district court, after considering extensive briefing and evidence, took about nine months to look at the case, issued a 12-page opinion, which I think this court will agree meets the standard for applying the Daubert and Rule 702 tests, which in turn means that this court should apply the abuse of discretion standard in reviewing the district court's decision. And of course, that means that even if this court might have ruled a different way, unless no reasonable person could agree with the district court, then its decision must stand. There, you'll see an appellant's brief, some concern about whether the expert should have had to do a number of different things that the Daubert cases set out, things like, well, any of the things, you know, and it is true that you aren't required to do everything that is listed under Daubert, but you have to do some of those things. And essentially, this expert didn't do any of it. He did no testing. There was no peer review. There was no look at other similar accidents, and he didn't exclude other potential causes of this accident. Well, was it the only cause, really, the weight in the bucket? Actually, no. And he conceded, the expert conceded, Judge, that it is possible to tip forward a skid-steer loader with only the rated operating capacity in the bucket, if you operate it aggressively enough. You can, the way these machines work, they have two handles, and if you push forward one side, one of the handles of the drive train on that side will operate, turning the machine away from that side. If you push forward the other one, that side will operate, and these are, it's a hydrostatic control system. So if you let your the bucket in a certain position, raised up a certain way, with even just the rated operating capacity in it, you can cause the bucket to, the machine to tip forward a little bit. But there's an important aspect of this, which is that skid-steer loaders are actually designed so that the weight, the center of gravity shifts forward as you pick up weight with the bucket. And that's because the skid-steering principle operates more efficiently if the weight is only on the front or the back wheels. If it's evenly distributed between those two, you can turn the machine, but it's a more laborious turn. If it's sort of balanced closer to the front or closer to the rear, if the center of gravity is shifted that way, the skid-steer operation works more efficiently. Operators can feel that when they have more weight than usual in the load. One of the things that was interesting here was that the plaintiff's expert, the appellants have pointed to his relying on Tyler Kirk's testimony, but he relies on a sort of an idealized version of the testimony. Tyler Kirk actually testified that he came to a complete stop at the ramp that he had come up from the basement of this steel plant before moving forward. But the expert said he thought the ramp was actually involved in the tipping accident. He said there's some involvement there, and I can give the court a site to that testimony. Was the ramp too steep or what? Well, that coming off the ramp, as Mr. Kirk testified, can you sort of come up the ramp and then slam down? Slam down or gradual flattening? No, it's a pretty steep edge to the ramp, and the loader itself does have front wheels and rear wheels, but you have a bit of a bump as you come off the ramp. Of course, the expert doesn't testify. Say again, I'm sorry. The expert didn't testify when they had designated it, I guess. Isn't that right? He didn't testify about the ramp? Yeah, about, well, whatever his expertise was about this machine. I don't remember his name. Pachinko. Pachinko, yeah. He said he thought the ramp was involved in helping to cause the accident. I guess whatever reason, he was not kept on as their expert. Isn't that right, or am I missing that? No, he was. We had him excluded by the district court. Yeah, okay. It's been the same expert for appellants all along. Okay, I don't understand whether his testimony was used or whether he was excused and not used. He was excluded, Judge. He was excluded by the district court. All right. What he had was written opinion, right? You're the expert that was he issued a report and we took his deposition. Yeah. And the report and the deposition were both consistent in that he didn't say in either place that the defect he'd identified in this case, which is that you can pick up more than the rated operating capacity with the 62 inch bucket actually existed at the time of this accident. So there was a gap, an analytical gap as the court put it between what he wanted to and what had actually happened. He could not link the two. The testing that plaintiff's attorney refers to that didn't need to be done, I think was referring, looking at the original machine back at the plant, which their expert did not do. But he also didn't do any testing of his own and it was not impossible or even difficult or even very expensive to do this. I know because we did it for Clark Equipment Company. We rented an exemplar S-130 loader. We loaded it up with first the rated operating capacity to show that in fact you can tip it forward with just that amount in it if you operated aggressively enough. And then we loaded it up with 1700 pounds, which was a little more than plaintiff's expert's estimate of what may have been in the bucket at the time of this accident. And we're able to demonstrate that it was possible to do the maneuvers that Mr. Kirk was supposed to be doing safely with that excess amount of weight in the bucket. There's a margin of safety built in. The rated operating capacity, as I mentioned, is half of the tipping capacity. So there's some room in between the two where you can operate the machine safely if you move slowly enough and if you keep the bucket low enough. And all this instruction is included in Bobcat Company's warnings and instructions to operators, which are included obviously with the machine, both in decals on the machine and in an operator error, I suppose. Well, there is. It's true. And we in fact believe that's what happened here because this machine with this same bucket was used perfectly safely for seven years by other employees at Sterling Steel Company without ever having an accident like this occur. So, you know, that tends to show that in fact what happened here was an aggressive, overly aggressive maneuver or maneuvers by Mr. Kirk that caused the machine to tip forward on this day. He testified himself, the load didn't look unusually large to him. He couldn't remember much about it. He couldn't remember whether it was a heaping load, but it didn't look unusually large. And he gave certain testimony about how he maneuvered the machine up to the edge of the pile where he was going to dump it and came to a complete stop, then raised the arms to dump the load. Mr. Pacheco massaged that testimony a little bit to say that he was moving forward slowly and raising the arms. And that's because he knows that just as a matter of simple physics, if you come to a complete stop and raise the load up to tipping point, the only way it will tip forward under that circumstance is if you have the tipping load in it, which is 2,800 pounds. And I think he did not believe that would have been possible. Didn't want to have to be stuck with saying that. And so he said that Tyler Kirk was moving. Well, Tyler Kirk didn't say that. He testified he had come to a complete stop. My time is just about up. If the court has any questions, I'm happy to answer them. Don't police. Oh, come on. Thank you. Thank you, Mr Patterson. Thank you, Your Honor. May have maybe two minutes. You have, I think, two minutes and 25 seconds. No, thank you. I think counsel's last argument proves the point as to why this is a jury case. He admits, and they always have, that the dynamic effect of operating this kind of a machine with the loads in the forward part of it can tip and reduce the rated operating capacity in the ordinary course of the machine as the center of gravity shifts forward. Mr. Chico did a lot of calculations and analysis to quantify what that is and to show that because of the extra load in the front of the machine, because of the large bucket, those shifts of center of gravity and the tipping point, even they admit it can be done within the rated operating capacity. If that's true, then this idea about the tipping load, and it won't tip until you get to the tipping load, is a subterfuge. Of course, it can tip before you get to the tipping load. That's why they say you must keep the ROC. Keep your load below the ROC so it won't tip. And they know perfectly well that it tips at or above the ROC. Now, there's a question or two about that ramp. I do want to mention that the ramp has nothing to do with this case because Tyler got to the top of the ramp. He stopped there. Then on level ground, he moved forward slowly. He approached the dump pile. He raised the load in preparation to tip it. And then the tip of the machine occurred. That's important because once you're away from the ramp, as the photographs convincingly show, the ramp has nothing to do with it. So they looked at whether Dan looked at the ramp or not. It has nothing to do with the case. They talk about no testing. And there's no need for Dan to test anything on our side because we're not doing anything novel. This is not novel to say, let's use a smaller bucket. That's been done long before by Clark, long afterwards, even by Sterling Steel. It's accepted in the industry and it's entirely the proper way to design and sell this bucket. Thank you. Thank you, counsel. Thanks to both counsel and the case will be taken under advisement.